## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAUL K. MUETH and )
SHIRLEY M. MUETH, )
)
        Plaintiffs, )
)
vs. )     **Case No. 07-cv-0131-MJR**
)
UNITED STATES OF AMERICA, )
)
        Defendant. )

## <u>MEMORANDUM and ORDER</u>

REAGAN, District Judge:

      A.    <u>Introduction</u>

      Commenced in February 2007, this suit challenges income taxes assessed against and collected from Paul and Shirley Mueth.  The  undersigned Judge enjoys subject matter jurisdiction under 28 U.S.C. § 1340 (this is a civil action arising under an Act of Congress providing for internal revenue) and 28 U.S.C. § 1346(a)(1)(this is a civil action against the United States for the recovery of taxes alleged to have been erroneously assessed).  Venue is proper in the Southern District of Illinois, because the Plaintiff taxpayers ("the Mueths") live in Lebanon, Illinois – within this Judicial District.

      The pertinent facts are set forth below, and the case comes before the Court on cross-motions for summary judgment which were fully and extensively briefed by June 2, 2008.

Bench trial is scheduled to commence July 21, 2008, with a final pretrial conference July 11, 2008.  Resolution of the pending motions begins with reference to the applicable legal standards.

B.    <u>Applicable Legal Standards</u>

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. ***Breneisen v. Motorola, Inc.***, **512 F.3d 972 (7th Cir. 2008),** *citing* **Fed. R. Civ. P. 56(c),** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986), and** *Krieg v. Seybold*, **481 F.3d 512, 516 (7th Cir. 2007).** *Accord Levy v. Minnesota Life Ins. Co.*, **517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, this Court must view the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party.  ***TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.***, **491 F.3d 625, 630 (7th Cir. 2007);** *Reynolds v. Jamison*, **488 F.3d 756, 764 (7th Cir. 2007).**

When cross-motions for summary judgment are filed, "we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." ***Diaz v. Prudential Ins. Co. of America***, **499 F.3d 640, 643 (7th Cir. 2007),** *quoting Santaella v. Metropolitan Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997).**

As the United States Court of Appeals for the Seventh Circuit stated

last month in **Samuelson v. LaPorte Community School Corp.**, **526 F.3d 1046, 1051 (7th Cir. May 22, 2008):** "On cross-motions for summary judgment, the court construes facts and inferences 'in favor of the party against whom the motion under consideration is made.'" **Accord Aux-Sable Liquid Products v. Murphy**, **526 F.3d 1028, 1032 (7th Cir. 2008)**, **citing Hess v. Reg-Ellen Mach. Tool Corp.**, **423 F.3d 653, 658 (7th Cir. 2005), and In re United Air Lines, Inc.**, **453 F.3d 463, 468 (7th Cir. 2006).**

The nonmoving party cannot succeed by resting on its pleadings. Rather, the non-movant (or the party opposing the adverse litigant's motion) must provide evidence on which the jury or court could find in its favor. **See Maclin v. SBC Ameritech**, **520 F.3d 781, 786 (7th Cir. 2008).**

Also bearing note is the standard governing taxpayer refund suits. "Deficiencies determined by the Commissioner of Internal Revenue are presumed to be correct," and "the taxpayer bears the burden of proving otherwise." That general rule holds true whether or not the taxpayer challenged the deficiency in Tax Court. **See Kohler Co. v. United States**, **468 F.3d 1032, 1035-36 (7th Cir. 2006)**; **Kikalos v. Commissioner**, **434 F.3d 977, 982 (7th Cir. 2006)**; **Reynolds v. Commissioner**, **296 F.3d 607, 612 (7th Cir. 2002).**

Put another way, IRS calculations are afforded a presumption of correctness, and taxpayers claiming entitlement to a refund generally have the burden of rebutting IRS assessments. **Estate of Starkey v. United States**,

**223 F.3d 694, 698 (7ᵗʰ Cir. 2000);** *Pittman v. Commissioner*, **100 F.3d 1308, 1313 (7ᵗʰ Cir. 1996);** *United States v. Janis*, **428 U.S. 433, 440 (1976).** With these standards in mind, the Court assesses the record before it.

C.  <u>Key Facts and Procedural History</u>

Paul and Shirley Mueth were investors and limited partners in Drake Oil Technology (Drake Oil). On their jointly-filed federal income tax return for 1983, the Mueths reported $156,253 in losses attributed to their partnership interest in Drake Oil.[1]  For this tax period, Drake Oil was subject to the unified partnership procedures delineated in the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, § 401, 96 Stat. 648.[2]

---

[1]  The pleadings variously refer to this loss as $156,253 (Plaintiffs' Complaint, Doc. 2, p. 3; & Plaintiffs' Statement of Undisputed Facts, Doc. 23, p. 3), $156,363 (Defendant's Statement of Undisputed Material Facts, Doc. 20, p.2; & Defendant's Memorandum in Supporting of Summary Judgment, Doc. 20, p. 15), and $156,283 (Paul Mueth Affidavit, Doc. 21-7).  The best the Court can glean, the latter figure is the correct amount (*see* Form 4549A-CG, REVISED, Doc. 2-8, at p. 8).

[2]  Partnerships are not subject to federal income tax but are required to file annual returns reporting their partners' distributive shares of income, gain, loss, deductions, or credits.  Partners must report their distributive shares of those items on their *personal* federal income tax returns.  Before 1982, the Commissioner of Internal Revenue and the courts were required to adjust partnership items at the partner level.  Because this requirement resulted in a duplication of administrative and judicial resources (as well as inconsistent results among partners), Congress enacted unified audit and litigation procedures in TEFRA to remove the administrative burden occasioned by duplicative audits and to provide consistent treatment of partnership income, gain, loss, deductions, and credits among all partners in the same partnership.  "TEFRA procedures determine the proper treatment of 'partnership

In September 1986, the Internal Revenue Service (IRS) commenced an audit on the 1983 tax return filed by Drake Oil. The Mueths were notified of the audit via September 8, 1986 letter (*see* Doc. 21-3, attachment to Declaration of Nathaniel J. Dorfman, Department of Justice, Tax Division).

In April 1987, the IRS issued a Notice of Final Partnership Administrative Adjustments ("Final Notice") for the 1983 tax period (Doc. 21-4). Drake Oil, together with Vulcan Oil Technology Partners and several other partnerships, petitioned the United States Tax Court for readjustment of the IRS determination contained in the Final Notice (Doc. 21-5; Petition in United States Tax Court, Docket No. 21530-87). What happened between the Spring of 1987 and the Spring of 2002, discussed further below, is relevant to resolution of the cross-motions before this Court. But for the purposes of this factual summary, we fast forward to the *conclusion* of the Tax Court case, which was nearly 15 years after the case began.[3]

---

items' at the partnership level in a single, unified audit and judicial proceeding.'" ***Domulewicz v. Commissioner,*** **129 T.C. 11, 17-18 (U.S. Tax Ct. 2007),** ***citing Randell v. United States,*** **64 F.3d 101, 103 (2nd Cir. 1995), and 26 U.S.C. § 6231.**

[3]    In 1987 and 1988, the IRS corresponded with the Mueths regarding their 1981 and 1982 income tax returns (which contained deductions claimed via the Mueths' partnership interest in Drake Oil) and their 1984 income tax return (on which the Mueths claimed no Drake Oil-related deductions). Counsel have produced letters between the Mueths and various IRS officials, including Revenue Agent David Kreke, Revenue Agent Cathy Wides, Daniel L. Black (Director of the Springfield, Illinois District), and Richard Knowles (initially a Revenue

On March 22, 2002, the Tax Court directed Drake Oil and its co-petitioners to show cause why their case ought not be dismissed for failure to prosecute. On June 13, 2002, the Tax Court dismissed the case for want of prosecution, thereby disallowing the challenge by the Mueths to the IRS determination disallowing the deductions (*see* Doc. 21-6).

The June 2002 dismissal ended the challenge to (effectively *affirming*) the IRS' finding that Drake Oil was <u>not</u> entitled to deduct the losses reported on the partnership tax return for the 1983 tax period. Disallowance of this deduction at the individual partner level increased the Mueths' federal tax liability for the 1983 tax period. The Mueths' taxable income rose approximately $156,000, which meant that the Mueths owed another $76,950 in taxes, plus roughly $514,000 in interest.[4]

On March 24, 2003, the IRS assessed the Mueths a deficiency for the 1983 tax year as follows:

$76,950.00 in underpaid taxes;
$349,684.61 in interest, and
$164,802.72 in "TMT" (Tax Motivated Transaction) interest.[5]

---

Agent and, later, a Group Manager working out of the East St. Louis, Illinois field office, which was part of the Springfield, Illinois District).

[4] The pleadings contain conflicting figures as to the interest. The memorandum supporting Defendant United States (USA)'s summary judgment motion (Doc. 20, p. 3) cites the interest assessment as $514,487.33 and also as $513,347.56. The best the Court can determine, the former figure is correct. **See Doc. 21-8, p. 8.**

[5] *See* Doc. 21-8, attachment to 2/13/2003 letter from IRS Tax Technician Grant (referencing totals on corrected Form 4549A-CG and

As referenced in note 2 above, the IRS also examined the Mueths' returns for years 1981 and 1982. The Mueths' accountant, William Kealey of Belleville, Illinois, assisted the Mueths in attempting to settle the results of that audit. The Mueths believed they settled their tax liability for 1981 and 1982, consenting to the adjustment proposed by the IRS as to those two tax years and delivering a check to an IRS Agent which was accepted and posted by the IRS (see Doc. 23, pp. 9-12).

The gist of the Mueths' tax refund claim before this Court (for the 1983 tax year) is that settlement of the 1981 and 1982 tax disputes changed the nature of the Drake Oil partnership items, thereby triggering a shorter period for the IRS to assess any deficiency as to tax year 1983.

What was or was not settled lies at the heart of this case and is hotly debated by the parties. But the record before the Court clearly discloses certain facts.

In February 2004, the Mueths paid $134,998.02 to the IRS (in response to the March 2003 assessment for tax year 1983). This payment covered the $76,950 in income tax liability for 1983 plus $58,038.02 in interest "volunteered" on that deficiency (Doc. 2, ¶ 3). The USA describes this as full satisfaction of the assessed tax plus "partial satisfaction of the assessed interest" (Doc. 20, ¶ 10).

---

stating "we will send a billing notice"), followed by 3/24/2003 assessment referenced at p.2 of Doc. 21-9.

The Mueths then filed an administrative refund claim for the 1983 tax period.  When their administrative claim was denied in November 2006, the Mueths commenced this federal lawsuit challenging the March 2003 deficiency assessed against them for the 1983 tax year.

Voluminous briefs before this Court delve into principles of partnership tax law – touching upon the quirks of auditing partnership returns under TEFRA provisions, the conversion of partnership to nonpartnership items, and various statutes of limitation in the partnership and nonpartnership context.  Two critical and interwoven questions emerge from the pleadings and addenda:  (1) whether the Mueths and the IRS entered into an enforceable agreement to settle the tax liability at issue, and (2) if so, whether a statute of limitations barred the IRS from assessing the deficiency against the Mueths.

D.    Analysis

In this suit, the Mueths claim entitlement to a refund of the taxes and interest they were assessed for the 1983 tax year.  To buttress their claim to this refund, the Mueths assert that a Closing Agreement they entered into with the IRS on June 7, 1989 (to settle the 1981 and 1982 tax years) converted the Drake Oil losses from partnership to nonpartnership items, via 26 U.S.C. § 6231(b)(1)(C).

Section 6231(b)(1)(C) provides that an item will cease to be a partnership item as of the date "the Secretary … (or his delegate) enters into a settlement agreement with the partner with respect to such item."  If the

losses, in fact, *were* converted to nonpartnership items under § 6231(b), then the IRS had to assess the tax deficiency within a one-year period under 26 U.S.C. § 6229(f)(1).

The Mueths further assert as follows.  The IRS had until June 7, 1990 to assess the deficiency for the 1983 tax year.  Since the IRS did not assess the deficiency by June 7, 1990, and the Mueths never agreed to waive or extend that period of assessment, the IRS was barred from making the assessment, having blown the limitations period in § 6229(f).

The USA counters that the Closing Agreement relied on by the Mueths was never signed by any authorized representative of the IRS, so it did *not* convert the Drake Oil losses from the 1983 tax return into nonpartnership items.   Which means the IRS' March 24, 2003 assessment of tax and interest was timely, because it fell within the special statute of limitations period for partnership items in § 6229.   Stated another way, the limitations period in § 6229 was still open, so the taxes were timely assessed against and properly collected from the Mueths.

The USA maintains that the IRS actually had three years from the date the 1983 return was filed and, due to the pendency of the Tax Court challenge, the three-year period was suspended until one year after the Tax Court decision became final (*id.* at pp. 14-16, *citing* 26 U.S.C. §§ 6229(a), (d)).

In other words, the IRS had until September 12, 2003 to assess tax and interest against the Mueths based on the Drake Oil losses reported on the

1983 return. The IRS made its assessment ($76,950 in tax and $514,487.33 in interest) on March 24, 2003, well before the September 12, 2003 deadline.

The USA insists that the Mueths and the IRS did not finalize any agreement to settle their tax liability, and the Closing Agreement relied on by the Mueths "was never signed by a representative of the Internal Revenue Service" (Doc. 20, p. 17). The USA accurately notes that the copies of the Closing Agreement produced by the Mueths (appended to the complaint and provided with interrogatory answers) are not signed by an IRS representative.

Additionally, the USA attests that none of the copies in the possession of the United States, "including those copies … in the administrative file of the Internal Revenue Service" is signed by a government representative, and no signed copy was ever produced at any of the depositions conducted in this case (Doc. 20, pp. 18-20). The USA posits that this precludes the entry of summary judgment in favor of the Mueths, as it constitutes a failure of proof on an essential element of the Mueths' tax refund claim, an element on which the Mueths bear the burden of proof.

The Mueths reply that their inability to produce a signed copy of the Closing Agreement does not doom their tax refund claim. They insist they have made a prima facie showing of the existence of a valid, binding settlement through the testimony and exhibits – primarily, the deposition testimony of IRS Agent and Group Manager Richard Knowles. Plus, the Mueths direct the Court's attention to cases holding that an enforceable settlement can be effected

without a signed closing agreement.

Even if no signed closing agreement exists in the case at bar, say the Mueths, the USA is estopped from denying the existence of a valid agreement because the District Director of the IRS ratified the settlement in a March 14, 1991 letter, the IRS acknowledged the existence of the agreement, and the Mueths relied on the IRS' representations to their detriment.

Analysis of this point starts with 26 U.S.C. § 7121, which provides:

> The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person ... in respect of any internal revenue tax for any taxable period.

The authority to settle tax liabilities under § 7121 is reposed in the Secretary of the Treasury and delegated to IRS employees of certain classifications, via a series of IRS "Delegation Orders." *See Urso v. United States*, **72 F.3d 59, 60 (7th Cir. 1995).**

Clearly, not all IRS employees have the requisite authority to settle a case or to execute a closing agreement. The Mueths do not deny this point. Rather, they say, a fully executed agreement was not needed here, because the actions of several IRS representatives rendered a partially executed Closing Agreement fully binding on the IRS.

Relying on principles of contract law, the Mueths contend that there is a valid and enforceable settlement via their signature on a Closing Agreement tendered to them by the IRS. They proffer a written Closing Agreement dated

June 7, 1989, explaining it as an offer extended from the IRS (as offeror) to the Mueths (as offerees), and accepted (signed & returned with no changes) by the Mueths.[6]

They note that IRS Revenue Agent David Kreke drafted the Closing Agreement on a template prepared and approved by IRS Counsel. They emphasize that IRS Group Manager Richard Knowles acknowledged the existence (and, by implication, the validity) of the June 7, 1989 Closing Agreement in examination reports and other documents he prepared in the summer of 1990. *See* **2/13/08 Knowles Depo. pp. 68-88 and related exhibits; Docs. 23-14, 23-15, 23-16.**

Having carefully reviewed the copious evidence – including the deposition testimony, the Wides correspondence, the Kreke documents, the Knowles "Form 4549" examination reports referencing a Closing Agreement, and the multiple copies of the Closing Agreement executed by the Mueths (*see* Exhibits to Doc. 26) – the Court concludes the following.

Revenue Agents Wides and Kreke lacked the authority to sign a closing agreement or otherwise settle the dispute regarding the Mueths' Drake

---

[6]    Another fact in the circuitous chronology of this case warrants mention:  Kreke presented an earlier closing agreement to the Mueths (or their accountant, Kealey) in November 1988.  The Mueths signed that agreement and returned it to Kreke on November 17, 1988, but – for reasons not abundantly clear – Kreke was asked to repeat the process in June 1989. *See* **Kreke 2/6/08 Deposition Testimony, Doc. 23-7, p. 16.**

Oil tax liability.  By contrast, Group Manager Knowles likely <u>had</u> the authority to sign a closing agreement resolving the Drake Oil partnership items on the Mueths' 1983 tax return.  ***See* Delegation Order No. 225 (an exception to the otherwise narrow authority grant in Delegation Order No. 97, Order No. 225 arguably gave Knowles, as Group Manager, authority to execute a closing agreement, since the losses reported by the Mueths appear to constitute a "tax shelter initiative.").**

The USA has stipulated this point (*see* Doc. 29, p. 4), although the Court need not reach it.  Assuming *arguendo* that Knowles was vested with the authority to sign a closing agreement, he never did so.

The Mueths have produced – and the record before this Court contains – no closing agreement signed by Knowles or any other representative authorized to bind the IRS to a settlement.  Knowles' deposition testimony clarifies that his references, in various reports, to a "Closing Agreement" meant the partially-executed agreement in his file.  That was date-stamped June 7, 1989 and signed only by the Mueths.  Indeed, Knowles testified that he had no recollection of ever seeing or receiving any closing agreement signed by an IRS representative.  ***See* Knowles Depo., Doc. 23-14 (depo pp. 87, 109-115).**

And though contract principles are useful in interpreting settlement agreements, they neither displace statutes specifically addressing settlement of tax cases *prior to formal litigation* nor resolve the question in *this* case: whether the IRS agreed to settle the Mueths' Drake Oil tax liability.

As the Seventh Circuit explained in ***Reynolds***, **296 F.3d 607, 613 (7th Cir. 2002):** "The settlement or closure of a civil tax dispute with the IRS is a matter controlled by statute."  Specifically, 26 U.S.C. § 7121 (governing closing agreements) and 26 U.S.C. § 7122 (governing compromises) provide the "exclusive method for settling civil tax disputes with finality."  ***Id.***[7]

For this reason, the ***Reynolds*** Court rejected a taxpayer's claim that two no-liability letters issued by the IRS' Kansas City office (which purported to credit the taxpayers the disputed amount) bound the IRS to a settlement.  The Court held that the letters might be extrajudicial admissions, but they did not constitute evidence that the taxpayers entered into a valid closing agreement with the IRS.  ***Id.***

Similarly, in ***Kennedy v. United States***, **965 F.2d 413 (7th Cir. 1992)**, the Seventh Circuit found that the government *not* estopped to collect taxes from a taxpayer who entered into a settlement agreement with an IRS agent that both lacked the authority to enter such a settlement and made misrepresentations regarding the statutory provisions governing settlement of tax matters.  The ***Kennedy*** Court declared: "Settlements of tax disputes with the IRS are governed by the provisions of 26 U.S.C. § 7121 and 26 U.S.C. § 7122, which pertain to closing agreements and compromises respectively."

---

[7]  This case involves settlement via closing agreement under § 7121. Section 7122 provides: "The Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution of defense...."

***Kennedy***, **965 F.2d at 419.** The Seventh Circuit soundly rejected the taxpayer's argument that is was reasonable for him (Gatewood) and his lawyer (Friedman) to believe that the IRS Revenue Officer with whom they were working would know and use the correct procedures to effectuate a settlement.

> Balanced against Gatewood's "common sense" argument is another principle of common sense. That principle being the fact that "government could scarcely function if it were bound by its employees' unauthorized representations....
> **Congress outlined the method by which settlement agreements between the IRS and taxpayers are to be consummated,** and Congress's legislative authority should not be subordinated to the act of an unknowledgeable administrative official.

***Kennedy***, **965 F.2d at 420, emphasis added.**

> Furthermore, the Seventh Circuit has announced:

> An examiner can't just compromise a tax claim or close a tax year to further examination.... **Only a Closing Agreement signed by a person authorized to ink such pacts,** the expiration of the statute of limitations, or the disposition of litigation brings the process to a guaranteed end.

> Apparent authority is not enough to bind the federal government to a contract; unless the agent had actual authority, any agreement is ineffectual.... The Supreme Court applied this principle to taxes in *Botany Worsted Mills v. United States*, 278 U.S. 282, 288-89 ... (1929).

***Urso v. United States***, **72 F.3d 59, 60-61 (7th Cir. 1995), emph. added.**

***Accord Klein v. Commissioner***, **899 F.2d 1149, 1152 (11th Cir. 1990)(no binding settlement existed despite taxpayer's belief that he accepted**

an unconditional offer from IRS to settle: "The settlement of disputed tax liabilities is governed by 26 U.S.C. § 7121 and § 7122.... The requirements set forth in these statutes and the accompanying regulations are exclusive and strictly construed").[8]

These cases instruct that, to be valid under 26 U.S.C. § 7121 and thereby bind the government, a closing agreement must be in writing and must be signed by a duly authorized representative. The record here contains no such document.

The June 7, 1989 Closing Agreement (not signed by anyone on the IRS' behalf) falls short of satisfying the requirements of a settlement enforceable under § 7121. Agent Wides and Agent Kreke lacked the authority to bind the IRS by any of their actions, and Group Manager Knowles (we assume for purposes of this Order that he possessed the authority) never signed a closing agreement.[9]

The cases cited by the Mueths, such as *Haiduk v. Commissioner*, **T.C. Memo. 1990-506, 1990 WL 136717 (Tax Court 1990)**, and *Treaty Pines Investment Partnership v. Commissioner*, **967 F.2d 206 (5th Cir.**

---

[8]    *See also Becker Holding Corp. v. Commissioner*, **2004 WL 435056, *4 (U.S. Tax Court 2004)("It has long been held that persons dealing with an agent of the government must take notice of the limitations of his authority.").**

[9]    And District Director Black did not "ratify" the unsigned Closing Agreement or otherwise bind the IRS by attaching (to his March 14, 1991 letter to the Mueths) either Agent Knowles' Form 4549 Report or a Form 870 waiver.

**1992)**, do not mandate a different result, although at first blush they appear tough to reconcile with caselaw highlighting the exclusivity of the § 7121 statutory process for resolving a civil dispute with the IRS.

In *Haiduk*, the Tax Court remarked that the settlement of tax cases is governed by general principles of contract law, and "settlement offers made and accepted by letters have been enforced as binding by this Court." *Treaty Pines* reiterates the principle that "general contract law principles govern tax case settlements." *Id.*, **967 F.2d at 211.**

As does *Becker Holding*, **2004 WL 435056 at \*3:**

> A settlement is a contract and, … general principles of contract law determine whether a settlement has been reached.… In tax cases, settlement offers made and accepted by letters have been enforced as binding agreements.… A settlement agreement may even be reached in the absence of a writing.

These cases involved tax disputes which had progressed to litigation, either in United States Tax Court or United States District Court. The settlements in these cases came *after* litigation had commenced. The Tax Court expressly referenced this fact in *Haiduk*, **1990 WL 136717 (emph. added):** "Formal stipulations of settlement or decision documents are not absolute prerequisites to a binding agreement to settle *pending litigation* if the intent of the parties to settle and the terms of the settlement are otherwise ascertainable."

The Tax Court then explained that § 7121 and the regulations

promulgated thereunder furnish the procedure whereby taxpayers may *administratively* settle their tax liabilities with finality by entering into closing agreements, "but exclusive use of such agreements to settle **cases docketed in this Court** is clearly not contemplated by the regulations." **Id., emph. added.** So, a "request for a closing agreement … may be submitted at any time BEFORE A CASE WITH RESPECT TO THE TAX LIABILITY INVOLVED IS DOCKETED IN THE TAX COURT OF THE UNITED STATES…. Section 301.7121." *Id.,* **emph. in original.**

In other words, the § 7121 statutory framework (providing for closing agreements) is the exclusive method to administratively settle a tax liability until a suit is docketed in Tax Court or District Court.  Once suit is filed, settlement need not be accomplished via § 7121 closing agreement and can be effected by other means.

The Fifth Circuit drove this point home in **Treaty Pines**, **967 F.2d at 212:**

> Under 26 C.F.R. § 301.7121-1(d)(1)…, once a tax case is docketed in the Tax Court, there is no requirement that a settlement of that case be concluded by way of a section 7121 closing agreement. The Garritys' partnership items were the sole subject matter of the Tax Court proceeding, and the Garritys could settle their case with respect to these partnership items without a closing agreement…

**Haiduk** and **Treaty Pines** describe a factual situation sharply contrasted by the facts surrounding the Mueths' purported settlement.  Those

decisions do not trump the line of cases (such as **Reynolds**, **Urso**, **Kennedy** and **Klein**) following the United States Supreme Court's pronouncement in **Botany Worsted Mills**, **278 U.S. at 288-89**, that federal statutes provide the sole method for settlement and resolution of tax claims prior to litigation:

> We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised … and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials.… When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.

**See also 35 Am. Jur. Federal Tax Enforcement, § 470 (2nd ed., updated May 2008)("A taxpayer seeking to conclusively settle a question … concerning … liability for internal revenue taxes … may do so by entering into a closing agreement with the Internal Revenue Service (IRS), which must be in writing. Such an agreement may be requested by a taxpayer at any time before a case concerning the tax liability in question is docketed with a court of competent jurisdiction.… Once a case is docketed in Tax Court, the parties do not have to execute a formal closing agreement to reach a valid settlement of a case.").**

In the case at hand, the Closing Agreement relied on by the Mueths covered settlement of the 1981 and 1982 tax years.[10] The deposition testimony

---

[10] *See* Brief in Support of Plaintiffs' Motion for Summary Judgment, Doc. 23, pp. 1-2 (describing the June 7, 1989 Closing Agreement as settling "Plaintiffs' 1981 and 1982 tax years"). And the depositions, including Paul Mueth's (P. Mueth Depo., pp. 95-96; Doc. 21-13, pp. 4-5) reveal

and exhibits herein establish that at the time that Closing Agreement was provided to the Mueths and signed by the Mueths, there was no Tax Court or federal district court litigation involving those tax years. There was merely an IRS audit examination. What was being settled in the Closing Agreement (disputed liability for 1981 and 1982) had not matured (and never lead) to formal litigation and thus could *only* be settled via the § 7121 process.

Section 7121 requires a closing agreement signed by an authorized IRS representative to settle a tax dispute. The record contains no such agreement. Because there was no settlement via the prescribed statutory method, the losses reported on the Mueths' 1983 tax return were not converted into nonpartnership items. The March 24, 2003 assessment of taxes and interest for the Mueths' 1983 tax period fell within the statute of limitations period for partnership items, 26 U.S.C. § 6229, and was timely.

Finally, the Court finds no merit in the Mueths' argument that the IRS was equitably estopped from assessing or collecting the deficiency in question. The Mueths have not demonstrated any affirmative misconduct by the IRS or any other action justifying application of the doctrine against the USA. *See LaBonte v. United States*, **233 F.3d 1049, 1053 (7th Cir. 2000) (In suits against the government, in addition to normal elements of estoppel, "one must also establish affirmative misconduct on the**

---

no closing agreement or other settlement for the 1983 tax period.

**part of the government ... [which] is more than mere negligence ... [and] requires an affirmative act to misrepresent or mislead.").**

Nor can the Mueths' show the detriment needed to invoke the doctrine of equitable estoppel. *See Kennedy*, **965 F.2d at 419 ("We are extremely doubtful that voluntary payment of lawfully incurred taxes is a detriment for purposes of estoppel analysis....").**

The Mueths were represented by a tax accountant at the time of the alleged settlement, and they had the assistance of a reputable and competent attorney during this period (*see* Mueth Depo., Doc. 23-2 pp. 16-18). The record before the Court shows no bad faith or misconduct by the IRS officials. In fact, the IRS advised the Mueths in 1990 that they had the right to post a cash bond to stop the accrual of additional interest on the Drake Oil partnership items from the 1983 tax return (*see* Doc. 27-7).

E.    Conclusion

The IRS has three years from the date a partnership tax return is filed (or due to be filed) to assess income tax attributable to any partnership item. **26 U.S.C. § 6229(a).** That three-year limitations period is suspended if the IRS issues a Notice of Final Partnership Administrative Adjustment that is challenged by the taxpayer in United States Tax Court. If such a challenge is filed, the limitations period is further suspended – until one year after the Tax Court decision becomes final. **26 U.S.C. § 6229(d).**

The March 24, 2003 assessment of tax and interest against the

Mueths fell within the limitations period of 26 U.S.C. § 6229(a) and (d). The assessment was proper and timely. No genuine issues of material fact remain, and the USA is entitled to judgment as a matter of law. Accordingly, the Court must find against the Mueths on their tax refund claim.

For all the reasons stated above, the Court **GRANTS** the USA's motion for summary judgment (Doc. 20) and **DENIES** the Mueths' motion for summary judgment (Doc. 22). The Clerk of Court **SHALL ENTER JUDGMENT** in favor of the USA and against Paul and Shirley Mueth.

IT IS SO ORDERED.

DATED this 27th day of June 2008.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge